# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KALISHA THOMAS** ) | |
| 5006 Woodford Lane ) | |
| Upper Marlboro, MD 20772 ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| **SECURIGUARD INCORPORATED** ) | |
| 6858 Old Dominion Drive, Suite 307 ) | |
| McLean, VA 22101 ) | **Jury Trial Demanded** |
| ) | |
| SERVE: ) | |
| ) | |
| COGENCY GLOBAL, INC. ) | |
| 1025 Vermont Avenue, N.W., Suite 1130 ) | |
| Washington, DC 20005 ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Now comes Plaintiff, Kalisha Thomas, by and through her undersigned counsel, and states as follows for her Complaint against Defendant, Securiguard Incorporated (hereinafter "Securiguard").

## PARTIES AND JURISDICTION

1. Plaintiff is an African American woman, who is homosexual and a resident of the State of Maryland.  Defendant Securiguard employed plaintiff as a Special Police Officer at the Administrative Office of the United States Courts, located at 1 Columbus Circle NE, Washington, DC 20002 from November 1, 2015 until September 15, 2016.

2. Defendant Securiguard is a private employer headquartered in McLean, Virginia. Defendant employed Plaintiff at the Administrative Offices of the U.S. Courts, in the District of Columbia until September 15, 2016.

3. This lawsuit is brought pursuant to the District of Columbia Human Rights Act, D.C. Code § 2-1402.11 (prohibiting discrimination), D.C. Code § 2-1402.61 (prohibiting retaliation) and D.C. Code § 2-1403.16 (private cause of action) and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a) (prohibiting discrimination) and 42 U.S.C. § 2000e-3(a) (prohibiting retaliation) and 42 U.S.C. 2000e-5(b) (private cause of action) (Referred to collectively as the "Title VII claims."

4. This Court has Original Jurisdiction, pursuant to 29 U.S.C. § 1331 over Plaintiff's Title VII claims.

5. This Court has supplemental jurisdiction over the District of Columbia Human Rights Act claims because the Court has original jurisdiction over Plaintiff's Title VII claims and the Plaintiff's D.C. Human Rights Act claims against Defendant arise from the same operative facts as the Title VII claims against Defendant, and all of the claims in the Complaint form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in this Court pursuant to 29 U.S.C. § 794a, 42 U.S.C. § 2000e-5(b), and 42 U.S.C. § 2000e-3(a) all read in conjunction with 42 U.S.C. § 2000e-5(f)(3)), because the Plaintiff was employed by Defendant in the District of Columbia.  Venue is also proper, pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred where Plaintiff was employed, in the District of Columbia.

7. Plaintiff has exhausted her administrative remedies. Plaintiff filed an EEOC claim for sexual orientation and sex discrimination and retaliation under Title VII (cross-filed with the D.C. Office of Human Rights) on February 16, 2016 against Defendant Securiguard. Plaintiff amended her Complaint to include additional discriminatory and retaliatory activity on July 12, 2016. A Notice of Right to File Suit was issued by the EEOC in this matter on November 2, 2017.

## PERTINENT FACTS

8. Plaintiff began working as an Armed Special Police Officer at the Administrative Office of the United States Courts (AOUSC) on October 1, 2013 for U.S. Security Associates. Securiguard took over the contract for U.S. Security Associates on November 1, 2015, at which time Securiguard became Plaintiff's employer.

9. Plaintiff was armed with a semiautomatic weapon, and along with the other officers on site, she helped protect those inside of the Administrative Office by processing visitors through security, patrolling the building, and responding to any threats to the safety and security of the complex. Plaintiff also served as a supervisor on one shift every two weeks.

10. From the beginning of her employment at the AOUSC, Plaintiff was subjected to severe and pervasive harassment based on her sexual orientation and gender by John Glover, who was a Contracting Officer Representative, employed by the AOUSC. Mr. Glover had responsibility for the contract with Securiguard.

11. Through his words and actions Glover made it clear to Plaintiff that he did not approve of Plaintiff because of her sexual orientation and her failure to comply with gender norms (e.g. he did not consider her to be sufficiently feminine).

12. Glover regularly referred to Plaintiff as "a man" or "pretty much a man" in her presence and would laugh at her.

13. On one occasion, while Glover was in a conversation with Plaintiff's former supervisor, Captain Tonya Morton, Morton asked Glover if a male or female guard should relieve a guard whose shift was ending. Morton was standing by Plaintiff and informed Glover that Plaintiff was available to take over for the other guard. Glover indicated that Ms. Morton should send Plaintiff because Ms. Thomas could serve as either gender. Ms. Morton laughed and repeated the comment to Plaintiff.

14. Glover also started a rumor that Plaintiff was dating Kimeerly Fleming, a Contracting Officer for the federal court system.

15. In January of 2016, Plaintiff was removed from her supervisory shifts as the Lead Officer on the Friday shift from 2-10 pm. Plaintiff had been regularly serving as a part-time supervisor for a year or more, and she had never received a complaint by any of the building's staff or visitors. Her performance reviews were consistently "Outstanding."

16. When Plaintiff met with one of her Securiguard supervisors, Major Tracey Hayes, about the removal from the shifts, Hayes informed her that Glover had complained to Hayes about Plaintiff's attitude and behavior. Glover's complaint was completely unjustified.

17. Without making any inquiry into the validity of Glover's complaint, Defendant Securiguard removed Plaintiff from her supervisory shifts to accommodate Glover's prejudice toward Plaintiff's sexual orientation and gender.

18. Plaintiff filed a formal EEOC Complaint for discrimination and retaliation against Securiguard on February 16, 2016, following her unjustified removal from her supervisory shifts.

19. On or around June 3, 2016, while the EEOC investigation was ongoing, Glover followed Plaintiff around from guard post to guard post while she was completing her duties and laughed at her while shaking his head.  This was very intimidating and embarrassing to Plaintiff, and Glover had engaged in similar intimidating and/or embarrassing behavior for several days prior.

20. Plaintiff found Glover's behavior intimidating, embarrassing and disturbing, and she reported it to Leslie Howard-Watts, the head of HR for Securiguard, and representatives from her union (UGSOA).  Plaintiff did not feel comfortable reporting the incident to her supervisors Lieutenant Michelle Anthony or Major Hayes because Plaintiff believed they had close personal relationships with Glover, and Plaintiff feared they would report her complaint directly to Glover.

21. On or around June 10, 2016, purportedly to remove her from Glover's ongoing harassment, Defendant placed Plaintiff on unpaid leave and instructed her not to return to her post at the AOUSC until it had investigated her claim and decided what action to take.  On or around June 28, 2016, Securiguard ordered Plaintiff not to return to work until further notice.

22. Defendant Securiguard offered Plaintiff a position as a security guard at the Library of Congress, where she would have been unarmed and represented by a different union.  She was never given any official paperwork for this position.

23. Plaintiff and her union were opposed to the transfer to the Library of Congress position, and they viewed it as retaliatory. Plaintiff was concerned that Securiguard was using the transfer to silence her rather than address the hostile work environment.

24. Plaintiff amended her EEOC Complaint on July 12, 2016 to include the new incidents of harassment and retaliation.

25. On or around August 5, 2016 Plaintiff reached a potential agreement with Securiguard to reinstate her with two weeks of back pay.  In return, Plaintiff was to drop the pending EEOC charges.

26. Before Plaintiff returned to work, Glover demanded that Plaintiff undergo a "suitability" evaluation.

27. Defendant Securiguard required Plaintiff to undergo a suitability evaluation of Plaintiff at the request of Plaintiff's harasser.

28. Plaintiff failed the suitability evaluation because, on information and belief, Securiguard intentionally provided the AOUSC incorrect information, namely that she had been terminated from her position. This was untrue.

29. After Plaintiff raised the error to the AOUSC's attention, the AOUSC requested additional information and/or clarification from Securiguard, but Securiguard did nothing to correct the error.

30. Securiguard informed Plaintiff that she was terminated from her position effective September 15, 2016, for failure to meet the suitability standards.

31. Defendant Securiguard offered Plaintiff no alternative position in its organization.

32. On information and belief, several other Securiguard officers initially failed their suitability evaluation and were given an opportunity to explain any disqualifying incidents.

33. Ms. Thomas was given no opportunity to correct the error that caused her to fail her suitability evaluation because Defendant Securiguard used the suitability determination as the pretext for terminating Plaintiff.

34. After her termination, Plaintiff struggled to find a new job because when she failed the suitability tests she could no longer get a security job in a government building. Plaintiff went from making $30-$32 an hour to making $14 an hour when she was hired by BTI Security in February 2017.

35. With only half of her former income, Plaintiff struggled to pay her bills and was evicted from her apartment.

36. Defendant Securiguard continued to harm Plaintiff after her termination. In the spring of 2017 it became time for Plaintiff to renew her Armed Special Police Officer license. Plaintiff needed Defendant Securiguard (as Plaintiff's immediately former employer) to sign license transfer paperwork so that Plaintiff could renew her license. Plaintiff provided Securiguard with the paperwork but never received the signed documents in return. As a result, Plaintiff's Armed Special Police Officer License expired on May 31, 2017. Prior to May 2017 she held the license for approximately fifteen (15) years.

37. Without an Armed Special Police Officer license, Plaintiff cannot carry a weapon for work, which leaves her far less competitive in the market. As an unarmed guard, Plaintiff's rate of pay will be far less.

## COUNT I: INDIVIDUAL ACTS OF DISCRIMINATION BASED ON SEX (GENDER AND GENDER NORMS) AND SEXUAL ORIENTATION

38. Plaintiff repeats the allegations found in each of the above paragraphs as if they were specifically restated here.

39. Defendant discriminated against Plaintiff because of her sex (gender and failure to comply with gender norms) and sexual orientation (homosexual) in violation D.C. and/or Federal law when Defendant: (1) removed her supervisory duties at the AOUSC; (2) instructed her not to return to her post at the AOUSC; (3) placed her on unpaid leave; (4) subjected her to a suitability evaluation at the request of Glover; and (5) terminated her.

40. Defendant's discriminatory conduct caused Plaintiff to suffer lost income and other economic damages as well as emotional pain and suffering damages.

41. Defendant's conduct was willful and malicious such that Plaintiff is additionally entitled to punitive damages.

## COUNT II: INDIVIDUAL ACTS OF RETALIATION

42. Plaintiff repeats the allegations found in each of the above paragraphs as if they were specifically restated here.

43. Defendant retaliated against Plaintiff, in violation of D.C. and/or Federal law, when it: (1) instructed her not to return to her post at the AOUSC; (2) placed her on unpaid leave; (3) subjected her to a suitability evaluation at the request of Glover; and (4) terminated her.

44. Securiguard also engaged in post-employment retaliation when it refused to complete the paperwork needed for Plaintiff to transfer her Armed Special Police Officer License.

45. Defendant's discriminatory conduct caused Plaintiff to suffer lost income and other economic damages as well as emotional pain and suffering damages.

46. Defendant's conduct was willful and malicious such that Plaintiff is additionally entitled to punitive damages.

### COUNT III: HOSTILE WORK ENVIRONMENT BASED ON SEXUALITY, GENDER AND PROTECTED ACTIVITY

47. Plaintiff repeats the allegations found in each of the above paragraphs as if they were specifically restated here.

48. Based on the allegations herein and to be proved at trial, Plaintiff was subjected to a hostile work environment, based on her sexual orientation, gender and/or protected activity (and/or some combination of the three factors), that was so severe and/or pervasive that it changed the terms and conditions of her employment, in violation of D.C. and/or Federal law.

49. Defendant was aware of the hostile work environment caused by Mr. Glover, and Plaintiff's Securiguard supervisors participated in the hostile work environment by participating in the humiliating conduct, removing Plaintiff's supervisory duties, placing her on unpaid leave, reassigning Plaintiff, negotiating in bad faith with Plaintiff, acquiescing to the suitability determination request, failing to correct the inaccurate suitability determination, terminating Plaintiff, and failing to respond to Plaintiff's post-termination request for the Armed Special Police Officer license paperwork.

50. Defendant failed to reasonably address the hostile work environment, following Plaintiff's internal and/or external (EEOC) complaints, which led Plaintiff to suffer emotional pain and suffering.

51. Additionally, as a result of Defendant's unlawful conduct, Plaintiff has been terminated from her position, and she has suffered economic damages resulting from the loss of her employment.

52. Defendant's conduct was willful and malicious such that Plaintiff is additionally entitled to punitive damages.

## RELIEF SOUGHT

WHEREFORE, Plaintiff prays this Court: order the Defendant to make the Plaintiff whole by paying Plaintiff: (1) monetary damages, as proved at trial; (2) compensatory damages in an amount to be determined at trial; (3) punitive damages; (4) Plaintiff's attorneys fees and other costs of litigation; and (5) granting such other and further relief to the Plaintiff as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully Submitted,

Leslie D. Alderman III
ALDERMAN, DEVORSETZ & HORA, PLLC
D.C. Bar No. 477750
1025 Connecticut Ave., NW
Suite 615
Washington D.C. 20036
Tel. 202-969-8220
Fax 202-969-8224
lalderman@adhlawfirm.com